UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MELISSA C.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, *Commissioner, Social Security Administration*,<br><br>Defendant. | No. 26-cv-371-JJM-RLA |

ORDER

# I. BACKGROUND

Melissa C. applied for Disability Insurance Benefits ("DIB") due to anxiety, depression, problems with her back, hand, arm, leg, and neck, fibromyalgia, irritable bowel syndrome, and asthma. She was denied benefits and appeals, raising a singular question – whether substantial evidence supports the Administrative Law Judge's ("ALJ") finding that Melissa C. could *frequently* handle and finger her right dominant upper extremity. The Vocational Expert opined that there were about 155,000 jobs available to her if she could *frequently* perform these actions, but if she could only *occasionally* handle and finger with her right dominant upper extremity, that number was reduced to about 2,700 jobs. Because the ALJ did not explain how he determined that she could frequently, as opposed to occasionally, manipulate her right hand, the Court grants Melissa C.'s motion and remands for further

consideration of the record evidence. ECF No. 8. The Commissioner's Motion to Affirm is denied. ECF No. 9.

## II. STANDARD OF REVIEW

A district court's role in reviewing the Commissioner's decision is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .." 42 U.S.C. § 405(g). The determination of substantiality must be made upon an evaluation of the entire record. The Court "must uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Rodriguez v. Sec'y of Health Hum. Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In reviewing the record, the Court must avoid reinterpreting the evidence or otherwise substituting its own judgment for that of the Secretary. *See Colon v. Sec'y of Health Hum. Servs.*, 877 F.2d 148, 153 (1st Cir. 1989). The "resolution of conflicts in the evidence is for the Secretary, not the courts." *Irlanda Ortiz v. Sec'y of Health Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991).

That said, the "First Circuit has stated that courts should ensure 'a just outcome' in Social Security disability claims." *Santa v. Astrue*, 924 F. Supp. 2d 386, 391 (D.R.I. 2013) (quoting *Pelletier v. Sec'y of Health, Educ. & Welfare*, 525 F.2d 158, 161 (1st Cir. 1975)). "[T]he Social Security Act is to be construed liberally to

effectuate its general purpose of easing the insecurity of life." *Rodriguez v. Celebrezze*, 349 F.2d 494, 496 (1st Cir. 1965); *see also Cohen v. Sec'y of Dep't of Health & Hum. Servs.*, 964 F.2d 524, 531 (6th Cir. 1992) ("[I]t is well to bear in mind that '[t]he Social Security Act is a remedial statute which must be "liberally applied."'" (second alteration in original) (quoting *Marcus v. Califano*, 615 F.2d 23, 29 (2d Cir. 1979))); *Slessinger v. Sec'y of Health Hum. Servs.*, 835 F.2d 937, 943 (1st Cir. 1987) ("[T]he Social Security Act should be construed liberally in order to further its remedial purposes." (citing *Cunningham v. Harris*, 658 F.2d 239, 243 (4th Cir. 1981)). The *Cunningham* court explained that

> [W]e are also bound to interpret the Social Security Act as a program of social insurance on which people can rely to provide for themselves and their dependents. Claimants are the beneficiaries of insured wage earners, not recipients of government gratuities, and are entitled to a broad construction of the Act. In practical terms, when a Social Security Act provision can be reasonably interpreted in favor of one seeking benefits, it should be so construed.

658 F.2d at 243 (citations omitted).

## III. DISCUSSION

After assessing Melissa's impairments and finding lumbar stenosis, cervical spine stenosis with degenerative disc disease, right lateral epicondylitis, and asthma to be severe impairments, the ALJ determined that she had the residual function capacity ("RFC") to perform light work with certain exceptions, relevant here was the exception that she "could have only frequent handling and fingering with the right dominant upper extremity." ECF No. 6 at 28. Because a Vocational Expert ("VE") testified that jobs exist in significant numbers in the national economy with that RFC, the ALJ determined that Melissa was not disabled.

Focusing on the exception and "frequent" modifier in rendering his RFC finding, the ALJ concluded that "given the claimant's right lateral epicondylitis, she is limited to frequent handling and fingering with her right, dominant upper extremity. However, the evidence does not support restrictions beyond those outlined in the residual functional capacity assessment." ECF No. 6 at 31. But the ALJ did not identify a medical source that supported this conclusion. The ALJ did not explain the evidentiary basis for this finding. And he rejected the assessment of two state agency medical consultants who concluded that Melissa had no restrictions on her ability to handle and finger with her dominant right upper extremity. The ALJ determined that the medical evidence showed that Melissa's abilities were more limited. He found their assessment less persuasive because:

> [a]dditional medical evidence received while developing the claimant's case for review at hearing, as well as evidence in the form of credible testimony at hearing, consistent with the medical evidence in the record justifies a conclusion that the claimant's manipulative limitations are more limiting than was concluded by the medical consultants.

ECF No. 6 at 31.

Although not persuaded by the state consultants, the ALJ did not identify a medical source who translated medical evidence in the record that led him to the conclusion that Melissa could handle and finger frequently. *See Coulombe v. Colvin*, 2016 WL 1068875, at *11 (D.R.I. Feb. 19, 2016) (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms, and no medical opinion supported the determination."). Nor does the decision explain why the evidence established

frequent—as opposed to occasional—manipulation. That omission matters because the evidence the ALJ cited was not self-translating. *See, e.g.*, *Daniel H. v. Kijakazi*, 2022 WL 2980822, at *4 (D. Me. July 28, 2022) (rec. dec.), *aff'd,* 2022 WL 3357488 (D. Me. Aug. 15, 2022) (holding that the ALJ's RFC determination was unsupported by substantial evidence when "the ALJ did not explain how he built a bridge from [the cited] evidence to the specific limitations assessed, and it [was] not self-evident.").

The ALJ's finding that Melissa could frequently do handling and fingering was not supported by substantial evidence because he did not explain how he connected this finding to anything from the record evidence. And the frequent as opposed to occasional modifier became important in assessing whether Melissa could work in the national economy with her RFC and limitations. The VE testified that if Melissa's ability to handle and finger was frequent, there were significant job that she could do but it that was reduced to <u>occasional manipulation</u>, none of the light work jobs identified as available at the less limited stage would be available to her.

> Q. Okay. And if I was to further change it such that the hypothetical Claimant could have only occasional handling and fingering with the right dominant upper extremity, what impact if any would that have on the jobs you cited to?
>
> A. As far as the light positions go, none of those positions would be viable positions anymore nor would they be at the sedentary exertional level.

ECF No. 6 at 58.[1] Therefore, the ALJ's unsupported finding was a critical error that could change the outcome of Melissa's DIB application.

## IV. CONCLUSION

The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.,* laboratory findings) and nonmedical evidence (*e.g.,* daily activities, observations), and the ALJ must 'explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.'" *Chantal E. v. Kijakazi*, 2023 WL 5123730, at *2 (D. Me. Aug. 10, 2023) (quoting SSR 96-8p)). Nothing in the decision explains how those findings establish an ability to handle and finger for as much as two-thirds of the workday. Because the ALJ's findings on Melissa's RFC were not supported by sufficient evidence in the record, this matter is remanded to the Commission to be reviewed considering this Order.

IT IS SO ORDERED.

***/s/John J. McConnell, Jr.***

_______________________________
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

October 26, 2026

---

[1] If the level were reduced to occasional, instead of frequent, the VE identified only a rental clerk occupation with about 1,100 jobs nationally and a call-out operator occupation with about 1,600 jobs nationally. ECF No. 6 at 59.